# UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

|  |  |
|---|---|
| Glen Armstrong, Sr. | |
| Plaintiff, | |
| | Case No. 12-cv-7962 |
| v. | |
| BNSF Railway Company, | Judge John Robert Blakey |
| Defendant. | |

## <u>MEMORANDUM OPINION AND ORDER</u>

Plaintiff Glen Armstrong, Sr. ("Plaintiff") sued Defendant BNSF Railway Company ("Defendant") under the Federal Railroad Safety Act ("FRSA"), 49 U.S.C. § 20101, *et seq.* On September 21, 2016, a jury returned a verdict in favor of Defendant. The same day, the Clerk of Court entered a judgment against Plaintiff directing that Defendant shall recover costs. Entered J. [194]. On October 12, 2016, Plaintiff made an oral motion to vacate the order of costs. Minute Entry [198]. For the reasons explained below, Plaintiff's motion is granted in part and denied in part.

## I. Background

Plaintiff Glen Armstrong worked for Defendant as a conductor until his termination in April 2011. On October 4, 2012, Plaintiff filed suit against Defendant in this Court alleging violations of the FRSA. Specifically, Plaintiff alleged that on May 4, 2010, while he was still employed by Defendant, his former supervisor assaulted him at Chicago Union Station and injured his foot and knee.

Plaintiff claimed that in response, Defendant unlawfully delayed procuring Plaintiff's medical care and later terminated him in retaliation for filing an injury report.

Plaintiff's claims were first tried before a jury beginning on January 19, 2016. Minute Entry [141]. On January 27, 2016, the Court declared a mistrial due to the jury's inability to reach a unanimous verdict. Minute Entry [148]. The case was retried beginning on September 12, 2016. Minute Entry [182]. Following a nine-day jury trial, the jury returned a verdict in favor of Defendant. Jury Verdict [193]. The same day, the Clerk of Court entered a judgment against Plaintiff directing that Defendant shall recover costs. Entered J. [194]. On October 14, 2016, Plaintiff filed a notice of appeal. Notice of Appeal [199].

On October 12, 2016, Plaintiff made an oral motion to vacate the order of costs. Minute Entry [198]. On October 16, 2016, Defendant filed its bill of costs in the amount of $31,054.23. Def.'s Bill of Costs [204].

## II.  Analysis

Federal Rule of Civil Procedure 54(d)(1) provides that "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Rule 54(d) "creates a strong presumption" that the prevailing party will recover costs. *Stone v. City of Indianapolis Pub. Utilities Div.*, 28 F. App'x 573, 579 (7th Cir. 2002). This presumption "is difficult to overcome, and the district court must award costs unless it states good reasons for denying them." *Id.*; *Delta Air Lines, Inc. v. Colbert*, 692

F.2d 489, 490 (7th Cir. 1982) ("[W]here Rule 54(d) applies, the prevailing party is prima facie entitled to costs and the losing party must overcome that presumption."). Although a decision regarding costs is ultimately in the Court's discretion, such discretion "is narrowly confined." *Contreras v. City of Chicago,* 119 F.3d 1286, 1295 (7th Cir. 1997).

Stated broadly, Plaintiff argues that Defendant's bill of costs be vacated or stayed because: (1) the FRSA creates a statutory exception to Rule 54(d)(1); and (2) awarding costs would result in injustice to Plaintiff. The Court will address each of Plaintiff's objections in turn, followed by an analysis of the specific costs claimed.

## A. The FRSA Does Not Create An Exception To Rule 54(d)

To repeat, under Rule 54(d)(1), "[u]nless a federal statute, these rules, or a court order provides otherwise, costs—other than attorney's fees—should be allowed to the prevailing party." Fed. R. Civ. P. 54(d)(1). Plaintiff posits that the FRSA constitutes one such statute.

The FRSA provides that "an *employee* prevailing in [an enforcement action] shall be entitled to all relief necessary to make the *employee* whole." 49 U.S.C. § 20109(e)(1) (emphasis added). Such relief includes, *inter alia*, "compensatory damages, including compensation for any special damages sustained as a result of the discrimination, *including litigation costs*, expert witness fees, and reasonable attorney fees." *Id*. § 20109(e)(2)(C) (emphasis added). Section 20109 is silent, however, on a prevailing *employer's* ability to cover costs.

The FRSA further states that enforcement actions shall be governed under

the Department of Labor complaint procedure set forth in 49 U.S.C. § 42121(b). Pursuant to that section, if the Secretary of Labor determines that an FRSA violation has occurred, then "at the request of the *complainant*," the Secretary shall assess against the violator "a sum equal to the aggregate amount of *all costs and expenses* (including attorneys' and expert witness fees) reasonably incurred, as determined by the Secretary of Labor, *by the complainant* for, or in connection with," the bringing of the complaint. *Id*. § 42121(b)(3)(B)(iii) (emphasis added). Once again, the statute omits any discussion of fees due to a prevailing *employer*, with one exception: if the Secretary finds that a complaint "is frivolous or has been brought in bad faith," the Secretary may award the employer "a reasonable attorney's fee not exceeding $1,000." *Id*. § 42121(b)(3)(C).

Plaintiff argues that the FRSA's statutory framework should be interpreted as an exception to the general rule stated in Rule 54(d)(1). Plaintiff's theory is foreclosed, however, by the Supreme Court's decision in *Marx v. Gen. Revenue Corp.*, 133 S. Ct. 1166 (2013). In *Marx*, the Supreme Court discussed the application of Rule 54(d) to another remedial statutory regime, the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692, *et seq. Id*. at 1170. There, the district court originally returned a verdict in favor of the defendant collection agency and, pursuant to Rule 54(d)(1), ordered the plaintiff to pay costs. *Id*. at 1171. The plaintiff filed a motion to vacate the award, arguing that the FDCPA set forth "the exclusive basis for awarding costs in FDCPA cases." *Id*. The FDCPA, like the FRSA, limits its discussion of costs owed to prevailing defendants solely to

frivolous cases: "On a finding by the court that an action under this section was brought in bad faith and for the purpose of harassment, the court may award to the defendant attorney's fees reasonable in relation to the work expended and costs." 15 U.S.C. § 1692k(a)(3). The district court rejected the plaintiff's argument and concluded that § 1692k(a)(3) did not displace the court's discretion under Rule 54(d)(1). *Marx*, 133 S. Ct. at 1171.

On appeal, the Supreme Court began with an examination of Rule 54(d)(1)'s text. The Court concluded that Rule 54(d)(1) "is straightforward"; it "codifies a venerable presumption that prevailing parties are entitled to costs." *Id*. at 1172. The Court acknowledged that such a presumption "can be displaced by a federal statute or a Federal Rule of Civil Procedure that 'provides otherwise.'" *Id*. at 1173 (quoting Fed. R. Civ. P. 54(d)(1)). The Court declared, however, that a statute "provides otherwise" only "if it is contrary to the Rule." *Id*. (internal quotations omitted). In other words, because Rule 54(d)(1) "grants district courts discretion to award costs," a statute is contrary to the Rule only "if it limits that discretion." *Id*. at 1174. Applying these principles to the FDCPA, the Court concluded that, while § 1692k(a)(3) discusses cases brought in bad faith, it is silent where bad faith is absent. *Id*. According to the Court, this silence "does not displace the background rule that a court has discretion to award costs." *Id*.

The court further rejected the plaintiff's claim that, by specifying that a court may award attorney's fees and costs when an action is brought in bad faith, § 1692k(a)(3) creates "a negative implication" that costs are unavailable in other

circumstances. *Id.* at 1175. The Court stated that the force of any negative implication "depends on context." *Id.* Analyzing "background presumptions governing attorney's fees and costs," the Court explained that while Rule 54(d) presumes a prevailing party is entitled to recover costs from the losing party, under the longstanding "American Rule," the opposite presumption exists with respect to attorney's fees. *Id.* The Court further recognized that, the American Rule notwithstanding, "federal courts have inherent power to award attorney's fees in a narrow set of circumstances, including when a party brings an action in bad faith." *Id.*

Viewed through this context, the Court concluded that the FDCPA merely codifies these background rules. *Id.* at 1176. The Court contrasted the FDCPA with other statutes where Congress used explicit language to limit a court's discretion under Rule 54(d)(1). *Id.* at 1173, 1177 (citing 7 U.S.C. § 18(d)(1) ("The petitioner shall not be liable for costs in the district court"); 28 U.S.C. § 1928 ("[N]o costs shall be included in such judgment, unless the proper disclaimer has been filed in the United States Patent and Trademark Office")). While the Court recognized that such express language is not necessary, its use "caution[ed] against inferring a limitation in § 1692k(a)(3)." *Id.* at 1177. That is, Congress "knows how to limit a court's discretion under Rule 54(d)(1) when it so desires." *Id.*

The Supreme Court's reasoning in *Marx* applies here. *See Leimkuehler v. Am. United Life Ins. Co.*, 713 F.3d 905, 915 (7th Cir. 2013) (applying *Marx* to costs related to ERISA actions). The FRSA, like the FDCPA, awards fees (specifically,

6

attorney's fees) to prevailing employers only if a case "is frivolous or has been brought in bad faith." 49 U.S.C. § 42121(b)(3)(C). This however, simply confirms "the background rule." *Marx*, 133 S. Ct. at 1178. The FRSA's silence regarding costs in non-frivolous cases is not "contrary" to Rule 54(d)(1)'s presumption, nor does it limit the Court's discretion in that area. *Id*. at 1173-74.

Thus, pursuant to *Marx* and the relevant legal text at issue, this Court finds that it may award costs to prevailing defendants in FRSA cases.

## B. Awarding Costs Does Not Result In Injustice To Plaintiff

Alternatively, Plaintiff argues that, due to Plaintiff's financial resources and pending appeal, awarding costs to Defendant would result in injustice. Pl.'s Resp. Def.'s Bill of Costs [207] 10-11. The presumption that costs are to be awarded to the prevailing party "may be overcome by a showing of indigency" in particular cases. *Badillo v. Cent. Steel & Wire Co.*, 717 F.2d 1160, 1165 (7th Cir. 1983). Nevertheless, the "exception is a narrow one." *Rivera v. City of Chicago*, 469 F.3d 631, 636 (7th Cir. 2006). Before determining that costs should be denied on the basis of indigence, the Court must first "make a threshold factual finding that the losing party is 'incapable of paying the court-imposed costs at this time or in the future.'" *Id*. at 635 (quoting *McGill v. Faulkner*, 18 F.3d 456, 459 (7th Cir. 1994)). Second, the Court should consider "the amount of costs," the "good faith of the losing party," and the "closeness and difficulty of the issues" raised by the case. *Id*.[1]

Here, Plaintiff bears the burden of providing the Court with "sufficient

---

[1] To the degree these additional case-specific considerations are relevant here, they are discussed further below.

documentation to support" a finding that he is unable to pay costs both now *and* in the future. *Id.* (internal quotations omitted). He has not done so. Adequate documentation "should include evidence in the form of an affidavit or other documentary evidence of both income and assets, as well as a schedule of expenses." *Id.* Plaintiff only provided the Court his 2014 and 2015 federal income tax returns. Pl.'s Resp. Def.'s Bill of Costs [207] Ex. A-B. These returns indicate that Plaintiff's gross annual income approximates $30,000. This evidence does not establish an inability to pay now and in the future. To the contrary, it demonstrates that plaintiff is capable of working full time and earning an income. Moreover, Plaintiff has failed to provide evidence as to other assets or expenses. Although Plaintiff's response claims that imposing costs would force Plaintiff into personal bankruptcy, such conclusory statements by counsel are not evidence. *United States v. Harris*, 230 F.3d 1054, 1057 (7th Cir. 2000). Based upon the record presented, the Court is not persuaded that Plaintiff is indigent, as that term is used within this context. Indeed, Plaintiff managed to pay the filing fee necessary to commence this lawsuit and did not seek leave to proceed *in forma pauperis*. In short, Plaintiff has not demonstrated that he will be unable to pay costs now or in the future, and thus he is not entitled to an indigence exception.

As a final matter, before assessing each individual claim for costs in turn, the Court denies Plaintiff's request that the Court stay any imposition of costs until the disposition of his appeal. A district court may award costs even while a substantive appeal is pending, and the record here fails to provide a sufficient basis for a stay.

*Lorenz v. Valley Forge Ins. Co.*, 23 F.3d 1259, 1260 (7th Cir. 1994).

**C.    Analysis of Specific Costs Claimed**

To be compensable, "a particular expense must fall into one of the categories of costs statutorily authorized for reimbursement." *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000). The specific costs subject to taxation are listed in 28 U.S.C. § 1920, which allows a "judge or clerk of any court of the United States" to tax the following:

> (1) Fees of the clerk and marshal;
>
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
>
> (3) Fees and disbursements for printing and witnesses;
>
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
>
> (5) Docket fees under section 1923 of this title;
>
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

To be awarded, the costs must also be both reasonable and necessary. *Rosas v. City of Chicago*, No. 09-cv-3605, 2010 WL 4038792, at *1 (N.D. Ill. Oct. 14, 2010) (citing *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.,* 924 F.2d 633, 642 (7th Cir. 1991)).

Defendant seeks to recover a total of $31,054.23. Def.'s Bill of Costs [204] 2. Defendant's requests are subdivided as follows:

| Type of Cost | Amount Requested |
|---|---|
| Deposition Transcripts | $9,435.86 |
| Daily Trial Transcripts | $5,410.85 |
| Printing Fees | $6,538.17 |
| Witness Fees | $5,404.58 |
| Exemplification Fees | $4,264.77 |
| **Total** | **$31,054.23** |

The Court addresses each expense category below.

### 1.     Deposition Transcripts

Defendant seeks to recover $9,435.86 for costs related to twenty depositions taken in the case.  Def.'s Bill of Costs [204] 1.  Deposition costs are authorized under § 1920(2).  *Cengr v. Fusibond Piping Sys., Inc.,* 135 F.3d 445, 454 (7th Cir. 1998). The cost of a transcript may be taxed, but the cost "shall not exceed the regular copy rate as established by the Judicial Conference of the United States."  Local Rule 54.1(b) (N.D. Ill.).  Additionally, court reporter appearance fees may be awarded, "but the fees shall not exceed the published rates on the Court website."  *Id*.  At the time of the depositions in this case, the original page rate in effect was $3.65 per page.  United States District Court, Northern District of Illinois, Transcript Rates, https://www.ilnd.uscourts.gov/Pages.aspx?rsp2kxYIAI6Z3skP0PESA+q3bXKkfRyo (last visited December 6, 2016).  The court reporter attendance fee equaled $110 for one half-day (4 hours or less), and $220 for a full day.  *Id*.

The cost of video recorded depositions may also be taxed, provided it is reasonable and necessary.  *Little v. Mitsubishi Motors N. Am., Inc.,* 514 F.3d 699, 702 (7th Cir. 2008).  Recordings made merely for the convenience of the requesting

attorney, however, may not be taxed. *Merix Pharm. Corp. v. Clinical Supplies Mgmt., Inc.*, 106 F. Supp. 3d 927, 943 (N.D. Ill. 2015), *appeal dismissed* (Sept. 21, 2015).

Analyzing within this framework, the Court finds the following amounts to be proper as to each of the claimed depositions.

(1)    **Brian Weaver.**  The Court awards $227.70 for the original transcript and $40.00 court reporter attendance fee, but denies the $22.50 requested for "Witness Read and Sign Services" and $19.50 for "Shipping & Handling." *See* Def.'s Bill of Costs [204] Ex. A at 2.

(2)    **Cederick Fuller.**  The Court awards $243.60 for the original transcript, but denies the $15.00 requested for "E-Tran-(.pdf) via E-Mail." *Id*. at 3.

(3)    **Christopher Motley.**  The Court awards $271.25 for the original transcript and exhibits, but denies the $15.00 requested for "E-Tran-(.pdf) via E-Mail." *Id*. at 4.

(4)    **Clayton Johanson (December 13, 2013).**  The Court awards $406.70 for the original transcript and exhibits, but denies the $15.00 requested for "E-Tran-(.pdf) via E-Mail." *Id*. at 5.

(5)    **Clayton Johanson (April 25, 2014**).  The Court awards $298.55 for the original transcript and exhibits, but denies the $15.00 requested for "E-Tran-(.pdf) via E-Mail." *Id*. at 6.

**(6)    David Gibson.**  The Court awards $352.18 for the original transcript, exhibits, and court reporter attendance fee.  *Id*. at 7.

**(7)    David Leahy.**  The Court awards $346.50 for the original transcript and exhibits, but denies the $30.00 requested for "E-Tran-(.ptx & .pdf) via E-Mail."  *Id*. at 8.

**(8)    Duncan Brown.**  The Court awards $189.26 for the original transcript and exhibits.  *Id*. at 9.

**(9)    Foster Peterson.**  The Court awards $394.80 for the original transcript and exhibits, but denies the $15.00 requested for "E-Tran-(.pdf) via E-Mail."  *Id*. at 10.

**(10)  Glen Armstrong (Transcript).**  The Court awards $1,594.80 for the original transcript and exhibits and $220.00 for a full day court reporter attendance fee.  The Court denies the requested attendance fee above the allowable rate (totaling $101.50), as well as the $22.50 for "Witness Read and Sign Services" and $29.50 for "Shipping & Handling."  *Id*. at 11.

**(11)  Glen Armstrong (Video).**  Given that Defendant obtained a written transcript, the Court finds that the video recording of Glen Armstrong's October 18, 2013 deposition was a matter of convenience, not necessity.  *See Merix Pharm. Corp.,* 106 F. Supp. 3d at 943.  Therefore, the Court denies the $1,159.50 requested for the video.  *Id*. at 12.

**(12)  Jamie Williams.**  The Court awards $385.25 for the original transcript and exhibits and $25.00 court reporter attendance fee, but

denies the requested $263.68 Expedited Fee, $25.00 "Witness Read and Sign Services" and $24.50 "Shipping & Handling." *Id*. at 13.

 **(13) James Hurlburt.** The Court awards $189.27 for the original transcript and exhibits. *Id*. at 9.

 **(14) John Nelson.** The Court awards $257.25 for the original transcript and exhibits, but denies the $15.00 requested for "E-Tran-(.pdf) via E-Mail." *Id*. at 14.

 **(15) Julie Bose.** The Court awards $338.85 for the original transcript and exhibits, but denies the $15.00 requested for "E-Tran-(.pdf) via E-Mail." *Id*. at 15.

 **(16) Matthew Igoe.** The Court awards $212.20 for the original transcript and exhibits. *Id*. at 16.

 **(17) Michael Uselding.** The Court awards $172.75 for the original transcript and exhibits, but denies the $15.00 requested for "E-Tran-(.pdf) via E-Mail." *Id*. at 17.

 **(18) Randy McMahan (November 26, 2013).** The Court awards $297.15 for the original transcript and exhibits, but denies the $15.00 requested for "E-Tran-(.pdf) via E-Mail." *Id*. at 18.

 **(19) Randy McMahan (June 5, 2014).** The Court awards $135.10 for the original transcript and exhibits, but denies the $30.00 requested for "E-Tran-(.ptx & .pdf) via E-Mail." *Id*. at 19.

(20) **Sheena Williams.** The Court awards $179.35 for the original transcript and exhibits and $70.00 court reporter attendance fee. *Id.* at 20.

(21) **Timothy Merriweather (May 14, 2014).** The Court awards 107 transcript pages at $3.65 per page, for a total of $390.55. The Court denies the requested transcript fee above the allowable rate (totaling $5.35). The Court awards $13.65 for exhibits, but denies the $15.00 requested for "E-Tran-(.pdf) via E-Mail." *Id.* at 21.

(22) **Timothy Merriweather (November 19, 2015).** Given that Defendant did not obtain a written transcript, the Court finds that the video recording of Timothy Merriweather's November 19, 2015 deposition was a matter of necessity, not convenience. *See Merix Pharm. Corp.,* 106 F. Supp. 3d at 943. Therefore, the Court awards $300.00 for the video. *Id.* at 22.

(23) **Torrence LeSure.** The Court awards $271.40 for the original transcript and exhibits. *Id.* at 24.

In sum, the Court awards the following deposition transcript costs:

| Witness | Amount Requested | Amount Awarded |
|---|---|---|
| Brian Weaver | $309.70 | $267.70 |
| Cederick Fuller | $258.60 | $243.60 |
| Christopher Motley | $286.25 | $271.25 |
| Clayon Johanson (December 13, 2013) | $421.70 | $406.70 |
| Clayton Johanson (April 25, 2014) | $313.55 | $298.55 |
| David Gibson | $352.18 | $352.18 |
| David Leahy | $376.50 | $346.50 |
| Duncan Brown | $189.26 | $189.26 |
| Foster Peterson | $409.80 | $394.80 |

| | | |
|---|---|---|
| Glen Armstrong (Transcript) | $1,968.30 | $1,814.80 |
| Glen Armstrong (Video) | $1,159.50 | $0 |
| Jamie Williams | $723.43 | $410.25 |
| James Hurlburt | $189.27 | $189.27 |
| John Nelson | $272.25 | $257.25 |
| Julie Bose | $353.85 | $338.85 |
| Matthew Igoe | $212.20 | $212.20 |
| Michael Uselding | $187.75 | $172.75 |
| Randy McMahan (November 26, 2013) | $312.15 | $297.15 |
| Randy McMahan (June 5, 2014) | $165.10 | $135.10 |
| Sheena Williams | $249.35 | $249.35 |
| Timothy Merriweather (May 14, 2014) | $424.55 | $404.20 |
| Timothy Merriweather (November 19, 2015) | $300.00 | $300.00 |
| Torrence LeSure | $271.40 | $271.40 |
| **Total** | **$9,435.86** | **$7823.11** |

## 2. Daily Trial Transcripts

In addition to deposition transcripts, Defendant requests $4,745.00 for transcripts of the January trial and $665.85 for transcripts of selected portions of the September trial (the direct examination of Plaintiff and cross-examination of Christopher Motley), totaling $5,410.85. Def.'s Bill of Costs [204] 5. The cost of daily trial transcripts "is reasonable and necessary when they are necessary for, among other things, direct and cross examination of witnesses and to respond to the opposing party's motions." *Vigortone Ag Prods., Inc. v. PM Ag Prods., Inc.,* No. 99-cv-7049, 2004 WL 1899882 at *5 (N.D. Ill. Aug. 12, 2004). The cost of daily transcripts has also been awarded where the trial was "lengthy and complex." *Majeske v. City of Chicago*, 218 F.3d 816, 825 n.3 (7th Cir. 2000).

Defendant's daily trial transcripts costs are at or below the allowable rate. *Compare* Def.'s Bill of Costs [204] Ex. B *with* United States District Court, Northern District of Illinois, Transcript Rates, https://www.ilnd.uscourts.gov/Pages.aspx?rsp2kxYIAI6Z3skP0PESA+q3bXKkfRyo (last visited December 6, 2016). Defendant asserts that it used daily trial transcripts to: (1) record the court's oral rulings during trial; (2) prepare its motions for directed verdict and closing argument; and (3) prepare direct examination and cross examination questions. The Court finds that such uses are reasonable and necessary and therefore awards the $5,410.85 requested for daily trail transcripts.

### 3.     Printing Fees

A prevailing party may recover costs for copies that were "necessary for use in the case." 28 U.S.C. § 1920(4).  This includes "costs for copies related to discovery and copies of pleadings, motions, and memoranda submitted to the court, but it does not include copies made solely for the convenience of counsel."  *Se-Kure Controls, Inc. v. Vanguard Prod. Grp., Inc.*, 873 F. Supp. 2d 939, 947 (N.D. Ill. 2012).  While the prevailing party must "provide the best breakdown [of copying costs] obtainable from retained records," it is "not required to submit a bill of costs containing a description so detailed as to make it impossible economically to recover photocopying costs," *Northbrook Excess & Surplus Ins. Co. v. Procter & Gamble Co.*, 924 F.2d 633, 644 (7th Cir. 1991).  Where a party "fails to substantiate all of the costs it claims were necessary and reasonable, the Court will 'reduce the costs to the level supported by [the party's] proof—even if that is zero.'"  *Se-Kure Controls*, 873

F. Supp. 2d at 947 (quoting *Trading Techs. Int'l, Inc. v. eSpeed, Inc.,* 750 F. Supp. 2d 962, 969 (N.D.Ill. 2010)).

### a)    General In-House Photocopying and Printing Costs

Defendant requests $3,042.80 in "in-house" photocopying and printing costs. Def.'s Bill of Costs [204] Attach. 2 at 5-6. Defendant's submissions provide the date, bill order, and total price for each of its copying fees. *See* Def.'s Bill of Costs [204] Ex. C. From this, "it is clear that [Defendant] has expended the claimed amount of copying costs." *Trading Techs. Int'l, Inc.,* 750 F. Supp. 2d at 979. Defendant's in-house invoice, however, makes "no reference to what documents were copied and how many copies were made." *Id.* Such information is "needed to permit the Court to ascertain for itself whether the copying costs were necessary or were, for example, extra copies made for the sake of convenience." *Id.* (internal quotations omitted).

Where the prevailing party has failed to provide sufficient information, courts in this district have either reduced copying costs by a substantial percentage, *see, e.g. Engate, Inc. v. Esquire Deposition Servs. LLC*, No. 01-cv-6204, 2006 WL 695650, at *6 (N.D. Ill. Mar. 13, 2006) (fifty percent reduction); *Allscrips Pharm., Inc. v. Hazuka*, No. 96-cv-1821, 1998 WL 1110062, at *1 (N.D. Ill. June 10, 1998) (twenty-five percent reduction), or denied copying costs entirely, *see, e.g. Telular Corp. v. Mentor Graphics Corp.*, No. 01-cv-431, 2006 WL 1722375, at *4-*5 (N.D. Ill. June 16, 2006); *Bilal v. BP Am. Inc.*, No. 03-cv-9253, 2006 WL 850849, at *2 (N.D. Ill. Mar. 24, 2006).

The Court recognizes that Defendant "inevitably incurred compensable copying costs as a result of this document-intensive litigation." *Trading Techs.,* 750 F. Supp. 2d at 980; *see also Carpenter v. Ford Motor Co.,* No. 90-cv-5822, 1993 WL 34831, at *3 (N.D. Ill. Feb. 11, 1993) ("Although we find Ford's request to be lacking in specificity, we recognize that within Ford's request there undoubtedly exist charges for copies that were necessarily for use in the case."). Nevertheless, the Court is unable to award Defendants total request "due to concerns that it may still contain expenses for items that are not compensable." *Trading Techs.,* 750 F. Supp. 2d at 979. Therefore, the Court in its discretion awards fifty percent of Defendant's original request, which equals $1,521.40. Such an award recognizes that Defendant inevitably incurred compensable copying costs but also "prevents a situation where [Defendant] benefits from the shortcomings in its proof, by recovering more compensation for costs than it should." *Id.* at 980.

### b)     Professional Printing Costs

Defendant also requests $3,495.37 in professional printing costs. Def.'s Bill of Costs [204] Attach. 2 at 5-6. Unlike its "in-house" cost submission, however, here Defendant specifically references what documents were copied (Defendant's motion for summary judgment and exhibit binders for trial). *Id.* at Ex. C. Therefore, the Court finds that such printing was "necessary for use in the case," 28 U.S.C. § 1920(4), and awards Defendant the full $3,495.37 requested.

### c)     Summary.  In sum, of the total $6,538.17 requested for printing costs, the Court awards $5,016.77.

### 4. Witness Fees

#### a) Attendance Costs

Defendant claims $53.00 in attendance costs for witness Paul Rice for both the January and September trials (totaling $106.00).[2]  Def.'s Bill of Costs [204] 2-3. Witnesses, however, are only entitled to a $40.000 per day attendance fee.  28 U.S.C. § 1821(b).  Therefore, the Court awards only $80.00 in attendance fees and denies $26.00.

#### b) Subsistence Costs

Defendant claims subsistence costs for witnesses Duncan Brown, Matthew Igoe, and Derrek Peckhart.  Such costs are recoverable when "an overnight stay is required at the place of attendance because such place is so far removed from the residence of such witness as to prohibit return thereto from day to day."  28 U.S.C. § 1821(d)(1).  Witnesses "shall be paid in an amount not to exceed the maximum per diem allowance" set by the General Services Administration.  *Id.* § 1821(d)(2). Thus, "the amount taxable is the amount actually paid or the statutorily defined amount, whichever is less*." Trading Techs. Int'l, Inc. v. eSpeed, Inc.*, 750 F. Supp. 2d 962, 971 (N.D. Ill. 2010) (quoting *Independence Tube Corp. v. Copperweld Corp.,* 543 F. Supp. 706, 721 (N.D. Ill. 1982)).

Both trials in this case occurred during fiscal year 2016, when the maximum per diem in Cook County for meals and incidental expenses equaled $74.00.  U.S. General Services Administration, Per Diem Rates, http://www.gsa.gov/portal/

---

[2] Defendant does not request attendance costs for any other witness.  Def.'s Bill of Costs [204] 2-3.

content/104877 (last visited December 6, 2016).  The daily subsistence costs for the above-named witnesses fall below this figure.[3]  Consequently, the Court awards Defendant its requested subsistence costs.

### c) Lodging Costs

**(1) January Trial.**  The maximum per diem for lodging in January 2016 equaled $141.00.  *Id.*  Defendant's requested lodging costs for the January 2016 trial fall below this figure.[4]  Therefore, the Court awards Defendant its requested lodging costs for the January 2016 trial.

**(2) September Trial.**  The maximum per diem for lodging in September 2016 equaled $212.00.  *Id.*

**(a) Duncan Brown.**  Hotel costs for Brown equaled $235.00 for one night.[5]  Def.'s Bill of Costs [204] Attach. 2 at 12.  Therefore, the Court awards only $212.00 in lodging fees and denies $23.00.

---

[3] For Brown, Defendant requests a total of $184.99 for five days (or $36.99 per day) for the January trial and $60.81 for two days (or approximately $30.40 per day) for the September trial.  For Igoe, Defendant only requests a total of $144.04 for three days (or approximately $48.01 per day) for the September trial.  For Peckhart, Defendant requests a total of $55.94 for two days ($27.97 per day) for the January trial and $62.51 for two days (or approximately $31.26 per day) for the September trial.  Def.'s Bill of Costs [204] 3.

[4] Defendant requests only $135.00 for Peckhart.  Def.'s Bill of Costs [204] 3.

[5] Defendant's submissions are unclear as to the precise number of nights each witness spent in paid-for lodging.  For example, for Brown, Defendant claims dates of "Sept. 15-Sept. 16 2016" and provides a total cost, but does not clarify whether Brown spent the nights of *both* September 15 *and* September 16 in paid-for lodging, or merely September 15.  *See* Def.'s Bill of Costs [204] Attach. 2 at 12.  The Court presumes the latter because the lodging entry on Brown's expense report is dated September 16, 2016.  Def.'s Bill of Costs [204] Ex. F.

**(b)** **Matthew Igoe.** Hotel costs for Igoe equaled $904.00 for two nights.[6] Def.'s Bill of Costs [204] Attach. 2 at 11-12. Therefore, the Court awards only $424.00 in lodging fees and denies $480.00.

**(c)** **Derrek Peckhart.** Hotel costs for Peckhart equaled $438.40 for three nights.[7] Def.'s Bill of Costs [204] Attach. 2 at 12. Therefore, the Court awards the $438.40 requested.

### d) Airfare Costs

Defendant claims airfare costs for Brown, Igoe, and Peckhart for both the January and September trial. A prevailing party is entitled to travel expenses for witnesses as long as the witness "utilize[s] a common carrier and the most economical rate reasonably available." 28 U.S.C. § 1821(c)(1).

**(1)** **Agent Booking Fees.** Defendant claims multiple "Agent Booking Fees." Such additional fees are not taxable under 28 U.S.C. § 1821(c)(1). Therefore, the Court denies the $70.00 requested.[8]

### (2) Duncan Brown's Travel for January Trial

For the January trial, Brown originally flew from Texas to Chicago on January 19, 2016, the first day of trial. Def.'s Bill of Costs [204] Attach. 2 at 9.

---

[6] *See supra,* note 4. Defendant claims dates of "Sept. 13-Sept. 15 2016" and provides a total cost, but does not clarify whether Igoe spent the nights of September 13, 14, *and* 15 in paid-for lodging, or merely September 13 and 14. *See* Def.'s Bill of Costs [204] Attach. 2 at 11-12. The Court presumes the latter because the lodging entry on Igoe's expense report is dated September 15, 2016. Def.'s Bill of Costs [204] Ex. E.

[7] *See supra,* note 4. Defendant claims dates of "Sept. 14-Sept. 16 2016" and provides a total cost, but does not clarify whether Peckhart spent the nights of September 14, 15, *and* 16 in paid-for lodging, or merely September 14 and 15. *See* Def.'s Bill of Costs [204] Attach. 2 at 12. This time, the Court presumes the former because the lodging entry on Peckhart's expense report is dated September 17, 2016. Def.'s Bill of Costs [204] Ex. G.

[8] Defendant requests five separate $14.00 agent booking fees. Def.'s Bill of Costs [204] 9, 11.

Brown did not testify however, until January 26, 2016.  *Id*. at 8.  Brown did not wish to remain in Chicago while he waited to testify, and therefore returned to Texas on January 22, 2016 and flew back to Chicago on January 25, 2016.  *Id*. at 8-9.  In doing so, Brown incurred a $200.00 change fee and an additional $331.32 round-trip airfare.  *Id*. at 9.  Brown's travel arrangements, however, were for his personal convenience and unnecessary for Defendant's case, which proceeded throughout his absence.  The Court, therefore, denies $531.32 related to Brown's change fee and second flight to and from Chicago.

### (3)    Remaining Airfare

Defendant's remaining submissions merely provide the carrier and total price for each ticket.  *See* Def.'s Bill of Costs [204] Ex. E-G.  From this, it is clear that Defendant expended costs for air travel, but it is impossible to tell whether the fares were the most economical rate reasonably available.  Such information is needed to permit the Court to ascertain how much reimbursement is warranted.

As with Defendant's "in-house" printing costs, the Court recognizes that Defendant "inevitably incurred" compensable travel costs related to air travel.  *See Trading Techs.,* 750 F. Supp. 2d at 980 (dealing with uncertainty related to printing costs).  Nevertheless, the Court is unable to award Defendant's total request "due to concerns that it may still contain expenses for items that are not compensable."  *Id*. at 979.  Therefore, the Court in its discretion awards fifty percent of Defendant's original request, which, after deducting the amounts already discussed, equals

$608.59.[9]  As with its printing costs, such an award recognizes that Defendant inevitably incurred compensable airfare costs, but also "prevents a situation where [Defendant] benefits from the shortcomings in its proof, by recovering more compensation for costs than it should." *Id*. at 980.

### e)  Miscellaneous Witness Costs

**(1)  Parking at Airport.**  Defendant requests $173.00 for airport parking fees.[10]  Def.'s Bill of Costs [204] 3.  Parking fees related to common carrier travel are taxable.  28 U.S.C. § 1821(c)(3).  Therefore, the Court awards the requested $173.00.

**(2)  Local Travel.**  Defendant requests an additional $1,248.20 for local travel costs for Brown, Igoe, and Peckhart.  Def.'s Bill of Costs [204] 3-4.  These costs involve fees related to train travel, car rental, fuel, parking, and taxis.  *Id*.  For witnesses, "normal travel expenses within and outside the judicial district" are taxable.  28 U.S.C. § 1821(d)(4).  The Court finds Defendant's local travel costs normal, reasonable, and necessary, and therefore grants the $1,248.20 requested.

### f)  Summary.  In sum, of the total $5,404.58 requested for witness fees, the Court awards $3,665.68.[11]

---

[9] Defendant's total requested airfare reimbursement is $1,818.49.  Subtracting the $70.00 related to agent booking fees and $531.32 related to Brown's untaxable January travel reduces this amount to $1,217.17, which, divided by two, equals approximately $608.59.

[10] Specifically, Defendant requests $96.00 for Brown and $77.00 for Peckhart.  Def.'s Bill of Costs [204] 3.

[11] This amount reflects the $5,404.58 requested minus the $26.00 denied in attendance fees; $23.00 denied for Brown's September lodging; $480.00 denied for Igoe's September lodging; $70.00 denied

### 5. Exemplification Costs

28 U.S.C. § 1920(4) permits recovery for fees "for exemplification." Although the statute does not define the term, the Seventh Circuit has embraced an "expansive definition." *Cefalu v. Vill. of Elk Grove*, 211 F.3d 416, 427 (7th Cir. 2000). The term is ordinarily construed as permitting an award "of the reasonable expense of preparing maps, charts, graphs, photographs, motion pictures, photostats, and kindred materials" when necessarily obtained for use in the case. *Id.* (quoting *Equal Employment Opportunity Comm'n v. Kenosha Unified Sch. Dist. No. 1*, 620 F.2d 1220, 1227 (7th Cir. 1980)). Indeed, any "means of presentation" is potentially compensable so long as it "furthers the illustrative purpose of an exhibit" and is "necessarily obtained for use in the case." *Id.* at 428.

Here, Defendant requests $180.00 for creation of medical graphics and $3,931.45 for reproduction of the security video that captured the alleged assault. Def.'s Bill of Costs [204] Ex. C-D. Both investments constitute proper exemplification for the purposes of § 1920(4). Although the cost to reproduce the security video was substantial, Defendant contracted to make the video compatible with common computer video players and allow for frame-by-frame review. Such modifications were necessary for trial, as both parties made nuanced arguments regarding the video's probative impact. Therefore, the court awards Defendant $4,111.45 in exemplification costs.

Defendant additionally requests $68.26 for "materials for closing argument," but fails to provide further detail. Def.'s Bill of Costs [204] Ex. C. Absent

for agent booking fees; $531.32 denied for Brown's January travel; and $608.58 denied for airfare.

clarification, the Court cannot determine whether these "materials" constitute proper exemplification. Therefore, Defendant's request for this $68.26 is denied.[12]

### 6. Summary

In light of the above, the Court awards costs in the amount of $26,027.86, broken down as follows:

| Type of Cost | Amount Requested | Amount Awarded |
|---|---|---|
| Deposition Transcripts | $9,435.86 | $7,823.11 |
| Daily Trial Transcripts | $5,410.85 | $5,410.85 |
| Printing Fees | $6,538.17 | $5,016.77 |
| Witness Fees | $5,404.58 | $3,665.68 |
| Exemplification Fees | $4,264.77 | $4,111.45 |
| **Total** | **$31,054.23** | **$26,027.86** |

## III. Conclusion

Plaintiff's oral motion to vacate the order of costs is granted in part and denied in part as described above. The Court awards costs to Defendant in the amount of $26,027.86, and the Clerk is directed to tax costs in this amount.

Date: December 15, 2016

ENTERED:

_____
John Robert Blakey
United States District Judge

---

[12] Adding the $4,111.45 awarded and $68.26 denied equals $4,179.71. Defendant, however, requests a total of $4,264.77 in exemplification costs. Def.'s Bill of Costs [204] 1. The source of the outstanding $85.06 is unclear, and therefore denied.